## John E. Potter, Appellant, v. N. Stetson & Company.

*Bailment—Lease—Executory contract of sale.*

Where the possession of personal property is transferred under an express contract of lease or other bailment contract, the mere fact that there is a superadded executory agreement for the sale of the property to the transferee, upon the payment of a certain price at any time during the bailment, does not convert the bailment into a sale, and, until the execution of the contract of sale by the payment of the price, the title to the property remains in the bailor even as against the bailee's creditors.

*Bailment or conditional sale.*

A written agreement for a definite period of rental—sixteen months— with a stipulation of return, constitutes a bailment even as against creditors of the bailee, a fortiori as to the lessee.

*Breach of contract—Forfeiture.*

On a default made by a lessee of a piano the contract is perforce rescinded and the payments of rental made thereunder by the lessee become in a legal sense as if never made ; and an assertion of rights by the lessor is not to invoke a forfeiture, but is the enforcement of contractual obligations expressed in words and implied in law.

Argued Oct. 5, 1899. Appeal, No. 84, Oct. T., 1899, by plaintiff, from judgment of C. P. No. 4, Phila. Co., Sept. T., 1897, No. 572, on verdict for defendant. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER and BEEBER, JJ. Affirmed. Opinion by BEAVER, J.

Trespass and statement in trover to recover the value of a piano taken by defendant from plaintiff. Damages were laid at $700. Defendant pleaded "not guilty." Before WILLSON, J.

It appears from the evidence that defendant company were dealers in pianos and made the following contract with plaintiff :

"N. STETSON & CO. LEASE No. 79.

"Notice.—No salesman, dealer or agent is permitted to make

any verbal contract or promise that will in any way conflict with or qualify the terms, or written or printed conditions of this lease, or to give, or promise to give, any article, accommodation or service, not specified in this lease, and N. Stetson & Co. will not be responsible for any agreements or promises of any nature in connection with this transaction, that are not fully written on the face of this lease.

"This agreement, made this 27th day of January, A. D. 1894, between N. Stetson & Co., a corporation under the laws of the state of New Jersey, party of the first part, and John E. Potter, of 6509, Ellwood avenue, Philadelphia, party of the second part,

"Witnesseth, That the said party of the first part hath, and by these presents doth, let unto the party of the second part a Steinway & Sons' upright, No. 78,072, for the term of sixteen months and . . . . . days from date, at the rental of $700, $200 to be paid through advertisements, $30.00 upon the first day of February next, and $30.00 on the first day of each month thereafter during the term, in advance.

"The party of the second part agrees that said instrument shall be placed in premises situate 6509 Ellwood avenue, and not to be removed therefrom without the written consent of the party of the first part, except in case of removal necessitated by danger from fire; and at the expiration or sooner determination of this lease to deliver up the said instrument to the said party of the first part, in good order, reasonable wear and tear excepted.

"The party of the second part agrees to cause the said instrument to be insured against loss by fire in a responsible insurance company, for the benefit of the party of the first part, during the said term.

"If the party of the second part promptly and fully performs all of the covenants on his part to be kept under this agreement, and desires to purchase the instrument, the party of the first part agrees, upon the payment to them of the sum of 1-100 dollars within thirty days after the expiration of the term, to deliver to the party of the second part a bill of sale of said instrument.

"If default is made by the party of the second part in keeping any of the covenants herein on his part to be performed,

then the said bailment shall forthwith cease and determine, and it shall be lawful for the party of the first part to enter upon the premises where the instrument is kept and repossess themselves of the same as though it had never been rented. And at their option it shall be lawful for them to file this lease or copy of the same in any court, together with an affidavit as to default, and to enter in such court such amicable action as may in their judgment be best adapted for the recovery of the said instrument, without security or bond, and any attorney is hereby authorized to sign said amicable action for the party of the second part, and also to appear and confess judgment against said party in said action ; and the clerk of said court is hereby requested by the party of the second part to enter said action and confession of judgment and issue such writs as are necessary to enable the party of the first part to obtain the said instrument by process of law, the said party of the second part hereby releasing and waiving to the officers of the law and all parties concerned all errors and all rights of appeal and stay of execution.

If such default does occur, and the party of the first part do not forthwith exercise their rights as above, such extension or indulgence shall not be considered in fact or in law as a waiver of any of such rights.

"This agreement is to be binding upon the heirs, executors, administrators, successors and assigns of all the parties hereto.

" Witness our hands and seals the day and year aforesaid:

" Witnesses :                    N. STETSON & Co. [L. S.]

                                 " A. VON BERMUTH.

                                 " JOHN E. POTTER.   [L. S.]

" CLARENCE SHANK."


There was evidence tending to show that upon the execution of this agreement the piano was delivered to plaintiff, advertising was furnished and instalments paid from time to time amounting to $452.34, leaving a balance of $263 ; that the accounts of this transaction were kept in an instalment book and not in the hiring book. Defendant's manager admitted on the witness stand that the usual price for hiring such a piano would not be over $15.00 a month, while the instalments Mr. Potter had agreed to pay were $30.00 a month. Cessation hav-

ing been made in the instalments, defendant went to plaintiff's house and took the piano away in July, 1896, and subsequently, on January 5, 1897, plaintiff tendered to defendant $309, alleged to be an amount in excess of the balance due defendant with interest, and demanded a return of the piano, which was refused.

At the trial the plaintiff made the following offer of proof, which was overruled :

[I propose to show by this witness, to be followed by other circumstances and witnesses, that the actual transaction between the parties on the day of the date of the lease in question, the 27th day of January, 1894, was a sale by the Stetson Company of the piano described in the lease to Mr. Potter, and that while in form the paper purports to be a hiring, that to that extent it does not express the truth of the relation between the parties, the truth being that the transaction was an actual sale and was placed in this form for the purpose of securing a lien to the vendors to enable them to secure payment for their property in the event of the purchaser's failing to comply with the terms of sale.

Objected to, first, because this witness has testified that he did not make this contract with Mr. Potter ; that it was made by another gentleman, Mr. Woodford or Mr. Schenck ; that the witness had no personal intercourse with Mr. Potter as far as the actual making of the contract was concerned.   Secondly, the contract speaks for itself as it occurred between the parties. Objection sustained.   Exception for plaintiff.] [1]

The court directed a verdict in favor of defendant.   Plaintiff appealed.

*Errors assigned* were (1) ruling on evidence, reciting same. (2) In directing a verdict for defendant.

*M. Hampton Todd,* for appellant.—This is a case of a conditional sale disguised under the form of a lease or bailment.

Perhaps no better description of this kind of a transaction can be given than that to be found in 3 Am. & Eng. Ency. of Law, 431, under the name " Instalment Sales—Conditional Sales Disguised as Leases."

Under the authorities in this state, as between the plaintiff and his creditors, this transaction was undoubtedly a conditional sale. There is no dispute that it was not a hiring or a bailment. It was substantially admitted that it was a purchase on instalments with a retention of lien by the vendor, defendant, to secure the payment of the unpaid instalments. This is the simple truth of the transaction.

One of the best discussions of the whole subject will be found in the opinion of JENKINS, J., affirmed and adopted by the Supreme Court in the case of Ott v. Sweatman, 166 Pa. 217. Stadtfeld v. Huntsman, 92 Pa. 53, followed; Rowe v. Sharp, 51 Pa. 26, distinguished; Enlow v. Klein, 79 Pa. 488, limited to its own peculiar facts; Farquhar v. McAlevy, 142 Pa. 233; Brunswick & Balke Co. v. Hoover, 95 Pa. 508; Rieker v. Koechling, 4 Pa. Superior Ct. 286; North v. Yorke, 6 Pa. Superior Ct. 354; Ferguson v. Rafferty, 128 Pa. 337.

*Owen B. Jenkins,* for appellee.—In Ott v. Sweatman, 166 Pa. 217, cited by appellant, there was no provision for the return of the machinery. The same criticism applies to Farquhar v. McAlevy, 142 Pa. 233, and Brunswick v. Hoover, 95 Pa. 508.

In Rieker v. Koechling, 4 Pa. Superior Ct. 286, the agreement was held to be a bailment, and North v. Yorke, 6 Pa. Superior Ct. 354, supports the appellee in its right to take and keep the piano claimed by appellant.

In Wheeler & Wilson Mfg. Co. v. Heil, 115 Pa. 487, the agreement was held to be a bailment and not a conditional sale.

OPINION BY BEAVER, J., November 20, 1899:

The plaintiff brought an action of trespass against the defendants and declared in trover for the conversion of a piano held by the plaintiff, under the provisions of a written contract which appears in full elsewhere in the report of this case. There is no allegation of wrongful taking. It is expressly conceded by the plaintiff that the defendants had the right to take possession of the piano under the terms of the written agreement, the allegation being that the plaintiff, having tendered the balance of instalments due under the agreement, with interest, was entitled to the return of the possession of the piano, and,

by reason of the failure to make such return, the defendants were guilty of a wrongful conversion of the plaintiff's property to their own use. In order to avoid the legal effect of the written agreement, plaintiff made an offer to show by the defendants' agent who was on the stand "That, while in form the paper purports to be a hiring, that to that extent it does not express the truth of the relation between the parties, the truth being that the transaction was an actual sale and was placed in this form for the purpose of securing a lien to the vendors to enable them to secure payment for their property in the event of the purchaser's failure to comply with the terms of sale." Upon objection, the offer was overruled and the testimony rejected. The assignment of error relating to the action of the court in regard to this offer practically amounts to nothing, for the reason that both the witness who was upon the stand and the plaintiff himself detail all the circumstances attending the preparation and execution of the agreement, from which it plainly appears that, although the plaintiff objected to the form of the agreement, it was insisted upon by the agent of the defendants, who refused to consummate the transaction upon any other basis. The plaintiff understood the legal effect of the agreement and signed it with such knowledge. He, therefore, had the full benefit of all that was contained in his rejected offer.

At the close of all the testimony, the court directed the jury to render a verdict for the defendants and this direction constitutes the only other error complained of. As to this we think the court was clearly right. "Where the possession of personal property is transferred under an express contract of lease or other bailment contract, the mere fact that there is a superadded executory agreement for the sale of the property to the transferee, upon the payment of a certain price at any time during the bailment does not convert the bailment into a sale and, until the execution of the contract of sale by the payment of the price, the title to the property remains in the bailor even as against the bailee's creditors:" 2 P. & L. Dig. of Dec. 1936, 14–32. There was in the written agreement a definite period of rental—sixteen months—and a stipulation to return. Under the terms of the lease, therefore, and all of our decisions upon the subject, this would have constituted a bailment, even as

against the creditors of the plaintiff.    If so, what superior rights
has the plaintiff himself?   The terms of the agreement are sim-
ple and easily understood.    It is called a lease.    Its terms are
those of a lease.    If the plaintiff is to be believed, he himself
understood it at the time it was executed, objected to it but
finally signed it, because he could secure the piano in no other
way.    The counsel of the plaintiff contends, however, that,
although the defendants had a right to take possession of the
property, they had no right to forfeit the payments made on
account of the purchase money, alleging that this would be a
fraudulent use of the agreement; but it is expressly stipulated
in the agreement that, "If default is made by the party of the
second part in keeping any of the covenants herein, on his part
to be performed, then the said bailment shall forthwith cease
and determine and it shall be lawful for the party of the first
part to enter upon the premises where the instrument is kept
and repossess themselves of the same as though it had never
been rented," which, of course, the contract being rescinded
implies that the payments made thereunder would be in the
legal sense, as if never made.    In other words, possession hav-
ing been taken of the property under the terms of the bailment,
it amounted to a rescission of the contract and terminated the
rights of both plaintiff and defendants thereunder.    It was the
right of the bailor to retake the leased property after failure on
the part of the lessee to fulfil the obligations of the lease.    To
assert this right was not to invoke a forfeiture but to enforce a
contractual obligation expressed in words and implied in law:
Cobb v. Deiches & Co., 7 Pa. Superior Ct. 252.

The plaintiff has referred to the elaborate discussion of the
subject of bailments found in the opinion of the lower court in
Ott v. Sweatman, 166 Pa. 217, affirmed and adopted by the
Supreme Court; but in that case the ice machine, which was
the subject of the agreement, not only became a fixture of the
real estate, but, so far as the agreement is quoted, it shows nei-
ther a definite period for the bailment nor a stipulation to re-
turn the property at the end thereof, nor can the latter be fairly
inferred.    The case was, therefore, in all its essentials different
from the present one and is clearly distinguishable from all of
the cases in which we have held the possession of personal prop-
erty to be a bailment and, therefore, good as against creditors

of the bailee.   There is no ambiguity or uncertainty about the agreement in this case.   It is called a lease.   Its terms are those of a lease.   It provides for monthly payments within a fixed period and, upon default, for the return of the property.   As already remarked, it would be clearly good as against the creditors of the bailee and is, therefore, of course, good as against him.

Judgment affirmed.